## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

| | | |
|---|---|---|
| TAMMY KNIELING, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 2022-36 |
| vs. | ) | |
| | ) | |
| DON FUNG FOOK and WILLIAM POSTON, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION and ORDER</u>

This matter is before the Court on defendants Don Fung Fook and William Poston's motion for summary judgment on plaintiff Tammy Knieling's claim for maintenance payments and her request for punitive damages on that claim.  [ECF 78].  Plaintiff opposes the motion. [ECF 93].  Also before the Court is plaintiff's motion for partial summary judgment as to her maintenance and cure claim.  [ECF 81].  Defendants filed an opposition, and plaintiff replied. [ECFs 87, 95].  This matter is set for trial on June 3, 2024.  [ECF 92].[1]

### I.    FACTUAL BACKGROUND

This maritime action arises out of plaintiff's injury while working as a chef and mate on the sailing vessel Somewhere Hot.  *See generally* [ECF 43].  Defendant Poston is the owner of Somewhere Hot.  *Id.* ¶ 7.  At the time of the events underlying plaintiff's claims, defendant Fook was the captain of Somewhere Hot.  *Id.* ¶ 6.  According to the complaint, on July 3, 2021, Fook negligently instructed plaintiff to let out the dinghy line, and when she did so, her left hand became entangled between the line and the cleat.  *Id.* ¶¶ 11, 15–17.  The parties do not dispute that plaintiff suffered injury to her left middle finger and rope burns on both hands.  *See* [ECF 79] ¶¶ 7–8; [ECF

---

[1] On April 26, 2023, upon the parties' consent, the District Court referred this matter to the undersigned for all purposes.  [ECF 40].

89] ⁋⁋ 7–8.  Once plaintiff's hand was free, a medical student who was a guest onboard the Somewhere Hot cleaned plaintiff's wound and wrapped her finger in a compression wrap.  [ECF 79] ⁋ 9.  Plaintiff did not immediately depart the boat to seek medical care.

On July 5, 2021, plaintiff emailed Red Hook and Yacht Haven Family Practices[2] and made an appointment for July 9, 2021, the last day of the charter.  [ECF 79-3] at 1; [ECF 83-3] at 104.[3] At that appointment, the doctor advised plaintiff to go to the emergency room at Schneider Regional Medical Center ("SRMC") for same-day evaluation and treatment.  [ECF 79-21] at 2. Plaintiff presented to the ER on July 9, 2021, and x-rays revealed an avulsion fracture of her left middle finger.  [ECF 79-22] at 6–10.  She received pain medication and antibiotics, and was instructed to wear a finger immobilizer, keep her fingers dry, rest and elevate her hand, and follow-up with Dr. Bacot.  *Id.* at 7–8; [ECF 79-3] at 13.  SRMC did not limit plaintiff's activities or impose work restrictions.  *See* [ECF 79-3] at 13.[4]

Plaintiff saw Dr. Bacot on July 19, 2021, and he ordered occupational therapy ("OT") with a request for home exercises because she "lives on a boat & is often out at sea."  [ECF 79-20] at 6; *see* [ECF 79-3] at 10.  Later that same date, plaintiff texted Fook: "Hand is healing.  Need the dates you need me to chef for you ASAP.  I have to schedule a few appointments."  [ECF 79-3] at 5.  When she realized an August 19, 2021 doctor's appointment would conflict with a scheduled charter, plaintiff texted Fook that she changed the appointment to September 16, 2021.  *Id.* at 6.[5]

---

[2] Plaintiff refers to this office as the "medical center" and "Red Hook Center."

[3] Plaintiff testified that this was the first appointment available, and that if she wanted to be seen sooner, she would have had to seek treatment at the emergency room, which she did not want to do.  [ECF 83-3] at 104.

[4] Plaintiff texted Fook that she was leaving SRMC to head back to the boat and stated "It is healing so that is a good thing."  [ECF 79-3] at 2.

[5] Following the initial trip during which she was injured, plaintiff worked three additional charters on the Somewhere Hot in July and August 2021.  [ECF 79] ⁋⁋ 4, 19–21; [ECF 79-13] at 2; [ECF 87-1] at 2.  Plaintiff's employment with

At her initial OT evaluation on July 22, 2021, the therapist gave plaintiff a home exercise program ("HEP").  [ECF 79-20] at 2–4.  At a second appointment on September 23, 2021, plaintiff continued to present with limited range of motion, decreased grip strength, and sensitivity, and the therapist gave her additional exercises.  *Id.* at 8.

Plaintiff did not receive any additional medical care for her finger until October 2022, when she saw Dr. Lovy at Holy Cross Medical Group and complained of worsening finger pain.  [ECF 79] ¶ 32; [ECF 79-18] at 1.[6]  Dr. Lovy assessed left hand finger stiffness and recommended ice, pain medication, and OT, and stated "[p]ain will not resolve without regaining ROM."  [ECF 79-18] at 1–2.  Plaintiff did not attend the therapy appointment because she was going to work on a boat.  [ECF 83-3] at 152.

Then, on January 31, 2023, plaintiff saw Dr. Fletcher for finger pain in both hands.  [ECF 79-16] at 1.[7]  A February 4, 2023 MRI of the left hand indicated "mild chronic third PIP joint sprain" but was otherwise unremarkable.  [ECF 83-15] at 9.  At a follow-up with Dr. Fletcher on February 21, 2023, plaintiff "continue[d] to complain of the same stiffness and discomfort in the top of her digit," and he prescribed lidocaine patches.  *Id.* at 13; [ECF 79-17] at 6.  Dr. Fletcher noted plaintiff "would like to improve the symptoms and the cosmetic appearance" and recommended (1) laser to improve pigmentation, (2) cortisone injections to improve quality of the

---

Somewhere Hot ended during the last trip when she either quit or was let go.  *See* [ECF 79-3] at 19; [ECF 79-29]; [ECF 83-3] at 114–15.  She then worked as a "chef/stew" on another vessel from August 20, 2021 to September 1, 2021, and continued to work as a "chef/stew," "private chef," and "chef/stew mate" on other vessels between November 2021 and July 2023.  [ECF 79-13] at 2 (August 28, 2023 discovery response listing plaintiff's work history through July 2023).

[6] Plaintiff testified that she made this appointment after telling Attorney Green about her hand pain, and he advised her to follow-up with another orthopedic provider.  [ECF 83-3] at 149.

[7] Per plaintiff's testimony, "the death of [her] first attorney resulted in a second attorney which consequently resulted in this Vanguard Plastic Surgery visit" with Dr. Fletcher.  [ECF 83-3] at 156.

scar, (3) hand therapy, and (4) PRP injections.  [ECF 83-15] at 14; *see also id.* at 1.  Plaintiff received a joint injection on March 16, 2023, and Dr. Fletcher recommended she continue range of motion exercises at home to improve stiffness and return for follow-up in a few months.  *Id.* at 2, 15.  Plaintiff last saw Dr. Fletcher on May 2, 2023; he observed no change in her range of motion and ordered PT and OT.  *Id.* at 16, 19.

## II.   PROCEDURAL HISTORY

Plaintiff filed her initial complaint in this action on May 19, 2022, alleging one count of negligence against defendant Fook.  [ECF 1].  In an amended complaint filed September 28, 2022, plaintiff alleged a second count of negligence against defendant Poston.  [ECF 15].  Then, on May 1, 2023, plaintiff, through new counsel, filed her second amended complaint ("SAC"), alleging three additional counts: Jones Act negligence, maintenance and cure, and unseaworthiness.  [ECF 43].  Plaintiff seeks damages (compensatory and punitive) as to each count in the SAC, as well as statutory and prejudgment interest, and attorney's fees and costs.  *See id.*

On March 18, 2024, defendants moved for summary judgment, contending plaintiff's claim for maintenance payments fails as a matter of law.  [ECF 78].  Defendants further urge the Court to dismiss plaintiff's request for punitive damages because there is no evidence that they "acted wantonly, willfully, or outrageously in redressing Plaintiff's claim for maintenance and cure."  *Id.* at 3.

Also on March 18, 2024, plaintiff moved for partial summary judgment on her ground IV claim for maintenance and cure.  [ECF 81].  Plaintiff contends there is no genuine issue of material fact that she has not yet reached maximum medical improvement ("MMI"), that she is entitled to maintenance and cure, and that defendants have an ongoing obligation to pay her maintenance and cure until she reaches MMI.  *Id.* at 1.

### III.     STANDARD OF REVIEW

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Favata v. Seidel*, 511 F. App'x 155, 158 (3d Cir. 2013) (citation omitted); FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("irrelevant or unnecessary" factual disputes do not preclude summary judgment). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant has the initial burden of showing no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing there is a genuine issue for trial. *Id*. In order to defeat a well-supported summary judgment motion, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3rd Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 322–26); *see Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (the nonmoving party "may not rest upon mere allegations, general denials, or . . . vague statements"); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("summary judgment is essentially 'put up or shut up' time for the nonmoving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

Finally, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *N.H. Ins. Co. v. Diller*, 678 F. Supp. 2d 288, 295 (D.N.J. 2009) (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)).[8]

## IV.    DISCUSSION

### A.  Maintenance and Cure

i.    Parties' Arguments

Defendants argue plaintiff's claim for indefinite maintenance payments fails as a matter of law for several reasons.  Defendants first argue that plaintiff was never incapacitated by her injury. [ECF 80] at 11.  They point out that plaintiff did not take any time off work and completed all of her scheduled charters on the Somewhere Hot until she was terminated/quit in August 2021. *Id.* at 12–13.  Defendants state they provided plaintiff food and lodging during her work on Somewhere Hot, and she never requested further maintenance or time off. *Id.* at 12–13, 17.  They note plaintiff continued to work on other vessels after she left Somewhere Hot. *Id.* at 16. Moreover, at the time of her final trip with Somewhere Hot in August 2021, plaintiff told Captain Voris she was "good to go" and had no limitations. *Id.* at 13.

Defendants further contend that even if plaintiff was technically incapacitated for some period of time following her injury, the record establishes that she reached MMI in August or September 2021, and thus nullifies her claim for indefinite maintenance payments. *Id.* at 2.

---

[8] Where a party fails to respond to a summary judgment motion, summary judgment is not automatically granted. *Anchorage Ass'n v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d. Cir. 1990) (nonmoving party's failure to respond does not automatically entitle movant to summary judgment).  Even without a response, a court may only grant summary judgment where appropriate. *See* LRCi 56.1(d) (the absence of a response "may" result in a finding that facts are undisputed).

Defendants base this assertion on plaintiff's statement in August 2021 that she was fit for duty, and Dr. Fletcher's statement that plaintiff's fracture was fully healed before he treated her. *Id.* at 17. Defendants also point to medical records indicating plaintiff stopped attending physical therapy in September 2021 because she was given a HEP, and stopped wearing a compression wrap on her finger because the therapist advised she no longer needed it. *Id.* at 17–18. Further, plaintiff continued her HEP for two years with no discernable effect and did not see a doctor for her finger for over a year. *Id.* at 18. Finally, Dr. Fletcher testified plaintiff's injuries are permanent. *Id.*

Lastly, defendants argue that Dr. Fletcher's recommended treatment of plaintiff's chronic pain and scar tissue is palliative, not curative, and thus cannot support a maintenance claim. *Id.* at 18–19.

In opposition, plaintiff first contends defendants apply the wrong standard to determine the cutoff date for a vessel owner's obligation to provide maintenance and cure. It is maximum medical improvement, not incapacitation, that controls, says plaintiff, and whether a seaman returns to work is irrelevant to this determination. [ECF 93] at 2. Plaintiff further states that based on her testimony that she was precluded from performing certain tasks due to her injury, she was by definition incapacitated. *Id.* at 4. Plaintiff submits that per Dr. Fletcher's testimony, there is no genuine issue that she is not and has never been at MMI, and she is therefore entitled to maintenance and cure as a matter of law. [ECF 82] at 7. She requests the Court order maintenance benefits at the rate of $91.30 per day moving forward, and retroactive to September 1, 2021. *Id.* at 9.

As to defendants' argument that she is not entitled to maintenance and cure because she went back to work, plaintiff agrees generally with this proposition, but contends it does not apply

when the seaman is forced to work by economic necessity.  [ECF 93] at 6.  Plaintiff argues such is the case here because defendants rejected her October and December 2021 demands for maintenance payments.  *Id.* at 7.

Finally, plaintiff disputes defendants' characterization of Dr. Fletcher's treatment recommendation as palliative care.  She contends that treatment aimed at improving functionality "is clearly not palliative," and that it is plaintiff who is entitled to summary judgment on this issue. [ECF 93] at 5.  Further, even assuming she did reach MMI in 2021, Dr. Fletcher opined in 2023 that she was not at MMI and she is therefore entitled to maintenance and cure from that point.  *Id.* at 6.  Plaintiff thus requests that in addition to maintenance benefits, the Court direct defendants to provide for her costs for the care Dr. Fletcher recommended.  [ECF 82] at 9.

ii.    Legal Standards

"A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).  It is an obligation "of ancient origin" and "was historically imposed in order to alleviate the physical and financial hardships which otherwise would have beset a sick or injured seaman put ashore."  *Vaughan v. Atkinson*, 369 U.S. 527, 535 (1962) (Stewart, J., dissenting).  "The doctrine entitles an injured seaman to three district remedies— maintenance, cure, and wages." *Messier v. Bouchard Transp.*, 688 F.3d 78, 81 (2d Cir. 2012).

> "Maintenance" compensates the injured seaman for food and lodging expenses during his medical treatment.  "Cure" refers to the reasonable medical expenses incurred in the treatment of the seaman's condition.  And [unearned] wages are provided in addition to maintenance, on the rationale that "maintenance compensates the injured seaman for food and lodging, which the seaman otherwise receives free while on the ship."

*Id.* (citations omitted); *accord Cox v. Dravo Corp.*, 517 F.2d 620, 623 (3d Cir. 1975) ("Maintenance is the equivalent of the food and lodging to which the seaman is entitled while at sea, . . . and cure is the equivalent of the medical care to which an ill or injured seaman is entitled while at sea."); *Gardiner v. Sea-Land Serv., Inc.*, 786 F.2d 943, 946 (9th Cir. 1986) ("the elements of the common law maintenance and cure action included a living allowance during the recovery period (maintenance), reimbursement for medical expenses (cure), and unearned wages for the period from the onset of injury or illness until the end of the voyage"); *see also Berg v. Fourth Shipmor Assocs.*, 82 F.3d 307, 309 (9th Cir. 1996) ("The term [unearned wages] refers to the actual wages the seaman did not earn because of his injury or illness.").

The remedy of maintenance and cure "is available to any seaman who becomes ill or injured while in the service of his ship," irrespective of fault.  *Cox*, 517 F.2d at 623; *see Farrell v. United States*, 336 U.S. 511, 516 (1949) ("Aside from gross misconduct or insubordination, what the seaman is doing and why [and] how he sustains injury does not affect his right to maintenance and cure . . . .").  To recover maintenance and cure, a seaman must show that "(1) he was working as a seaman, (2) he became ill or injured while in the vessel's service, and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury."  *West v. Midland Enterprises, Inc.*, 227 F.3d 613, 616 (6th Cir. 2000); *accord Diefenbach v. M/V Eagle Ray*, 2017 WL 1234135, at *2 (D.V.I. Mar. 31, 2017).  "Although the seaman's right of recovery for maintenance and cure is broad, . . . he still bears the burden of alleging and proving facts that bring himself within its scope."  1 Robert Force and Martin J. Norris, *The Law of Seamen* § 26:76 (5th ed. Nov. 2023 update).  "[T]he seaman[] must act with reasonable diligence to ascertain the nature of his illness and his need for treatment, and he must seek the necessary treatment to correct the illness or injury."  *Lipari v. Mar. Overseas Corp.*, 493 F.2d 207, 210 (3d Cir. 1974); *Pyles v. Am.*

*Trading & Prod. Corp.*, 372 F.2d 611, 619 (5th Cir. 1967) (seaman is not "entitled to maintenance and cure if he is not sufficiently ill or disabled as to make advisable some kind of medical attention").

"The duty to pay maintenance and cure commences when the seaman falls ill or is injured and leaves the ship." 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:28 (6th ed. 2018) (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355 (5th Cir. 1987) (seaman was entitled to maintenance payments commencing on date he left ship, rather than date he was injured)). The obligation "extends during the period when [the seaman] is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan*, 369 U.S. at 531. Stated another way, the shipowner is liable for maintenance and medical care until either the seaman has been cured or his incapacity has been declared permanent. *Farrell*, 336 U.S. at 517–18; *Vella v. Ford Motor Co.*, 421 U.S. 1, 5 (1975); *Smith v. Delaware Bay Launch Serv., Inc.*, 842 F. Supp. 770, 773 (D. Del. 1994) ("Both maintenance and cure are to be paid until the seaman reaches maximum recovery or maximum cure."), *aff'd*, 54 F.3d 770 (3d Cir. 1995).[9] "Maximum cure is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition, a determination that would be appropriate if the seaman's injury is incurable or future treatment would merely relieve pain and suffering but not otherwise improve the seaman's physical condition." *Alario v. Offshore Serv. Vessels, L.L.C.*, 477 F. App'x 186, 188 (5th Cir. 2012) (internal quotations and citation omitted).

But the shipowner's obligation is not without limits. The duty to provide maintenance and cure does not extend to palliative treatments, *Vaughn v. Am. Com. Barge Line, LLC*, 672 F. Supp.

---

[9] While the obligation to pay maintenance and cure may therefore extend beyond the seaman's employment term, the right to wages does not. *See McManus v. Marine Transp. Lines*, 149 F.2d 969, 970 (2d Cir. 1945).

3d 184, 189 (E.D. La. 2023); *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015),[10]

nor does it require lifetime payments for permanent injuries.  *Smith v. Delaware Bay Launch Serv.,*

*Inc.*, 972 F. Supp. 836, 848 (D. Del. 1997); *Farrell*, 336 U.S. at 519; *see Fitzgerald v. U. S. Lines*

*Co.*, 374 U.S. 16, 20 n.7 (1963) ("Medical expenses need not be provided beyond the point at

which a seaman becomes incurable.").  Thus, while the Supreme Court has endorsed a liberal

interpretation of maintenance and cure with doubts to be "resolved in favor of the seaman,"

*Vaughan*, 369 U.S. at 532, "it is clearly not an open-ended duty to provide food, lodging and

medical care for the total duration of every illness or injury incurred while in the service of a

vessel."  *Cox*, 517 F.2d at 623.[11]  In short, "[t]he duty does not extend beyond the seaman's need."

*Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 531 (1938).

  iii.  Analysis

---

[10] "Treatment intended to better a plaintiff's physical condition as opposed to only alleviating pain and discomfort is considered curative.  Treatment that does not improve the seaman's condition, but only works to alleviate pain is considered palliative."  *Semien v. Parker Drilling Offshore USA LLC*, 179 F. Supp. 3d 687, 697 (W.D. La. 2016) (citation omitted); *see, e.g., Barto*, 801 F.3d at 476 (finding surgery to remove pressure from nerve sac would better seaman's condition "by curing the root cause of his pain rather than merely correcting the symptom (pain)" and "was therefore curative rather than merely palliative in nature").

[11] The Ninth Circuit observed:

> The Supreme Court's statement that "ambiguities or doubts . . . are resolved in favor of the seaman," *Vaughan*, 369 U.S. at 532, 82 S.Ct. 997, concerned the seaman's entitlement to maintenance at trial, not at summary judgment.  Because the summary judgment standard is compatible with a seaman's claim for maintenance, we see no reason to modify the summary judgment standard in this way.  Any such modification would run contrary to the stated purpose of the 1966 integration of admiralty and civil rules.  *See* 14A Wright et al., § 3671.4 ("[I]n view of the 1966 integration of admiralty and civil rules, procedure in admiralty . . . should be the same as in cases in law and equity unless a strong policy or statute prevents this uniformity of treatment." (quoting *United States v. Article Consisting of 216 Cartoned Bottles, More or Less, Sudden Change*, 288 F.Supp. 29, 32 (E.D.N.Y. 1968))).

*Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 539 n.18 (9th Cir. 2018); *Buenbrazo v. Ocean Alaska, LLC*, 2007 WL 7724765, at *4 (W.D. Wash. Feb. 28, 2007) ("Disregarding genuine issues of material facts [] that exist prior to trial before each party has had an opportunity to make their case places too heavy a thumb on the scale in favor of the seaman."); *see also Witbart v. Mandara Spa (Hawaii), L.L.C.*, 860 F. App'x 175, 176 (11th Cir. 2021) ("<u>Vaughan</u> did not state that all ambiguities, or even evidentiary ambiguities, were to be resolved in every seaman's favor.").

While "a seaman's initial entitlement to maintenance and cure . . . can properly be resolved on summary judgment," *Barnes*, 889 F.3d at 539 (citation omitted), such claims generally "present[] questions of fact [and] should not be disposed of by summary judgment nor should payment be decreed on motion.'" *Bloom v. Weeks Marine, Inc.*, 225 F. Supp. 2d 1334, 1336 (M.D. Fla. 2002) (citation omitted). As to plaintiff's motion for summary judgment on the issue of maintenance and cure, the Court finds that there are issues of material fact and the motion is therefore denied.[12] Insofar as defendants seek summary judgment on the maintenance issue, that

---

[12] For example, as to cure, while there is no dispute that defendants paid at least some of plaintiff's 2021 medical bills, there is a dispute as to how much is still outstanding. *See* [ECF 83-10]. As to plaintiff's 2023 demand for payments based on Dr. Fletcher's opinion, that the parties differ so widely in their characterization of the recommended treatment as palliative versus curative evidences a material dispute of fact on this issue. Nor will the Court award payments based on some hypothetical future treatment that the plaintiff has not scheduled nor received. *Calmar S.S. Corp.*, 303 U.S. at 531–32 (seaman is entitled to maintenance and cure in "such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which can be definitely ascertained"); *Bonneau v. Guidance Fishing Corp.*, 919 F. Supp. 46, 48 (D. Mass. 1996) ("where a future operation is presently only a possibility, maintenance and cure cannot be 'definitely ascertained' and thus, cannot be awarded"); *Tanner v. Grand River Navigation Co., Inc.*, 2015 WL 8310291, at *6 (E.D. Mich. Dec. 9, 2015) (same); *see also Lipari*, 493 F.2d at 215 (Hunter, J., concurring in part) (seaman should not be allowed to recover maintenance and cure for period when "he did not make reasonable efforts to seek treatment").

There is also the question of whether plaintiff is now, or was previously, at MMI. "The Third Circuit has recognized that the determination of when a seaman has reached maximum cure is not always clear-cut." *Smith*, 972 F. Supp. at 848. When there is "a factual dispute as to when a diagnosis of permanency was made[,] . . . such [] dispute [] must be resolved by the trier of fact." *Id.* (quoting *Cox*, 517 F.2d at 627). Here, there is no medical testimony or other evidence unequivocally showing that plaintiff reached MMI in August or September 2021 as defendants contend. Nor is there any opinion stating she was not at MMI at that time. Dr. Fletcher testified that plaintiff's injury has a permanent nature and that there will be some stiffness and pain/discomfort that never goes away. [ECF 83-5] at 20. He stated he could not opine on MMI until plaintiff received further treatment and returned to him for another evaluation, *id.* at 77–80, but there is no indication that she has done either of these things. Dr. Fletcher further stated he needed to see plaintiff again to determine if the treatment he recommended is medically necessary. *Id.* at 101.

A related issue is how plaintiff's employment impacts her claim. Plaintiff urges that for purposes of determining MMI, "it does not matter if a seaman returns to work." [ECF 93] at 2. But plaintiff is only partially correct. "The date when the seaman has resumed employment is often taken as the time for ending the period during which maintenance and cure may be payable. This is especially so where the seaman has left the hospital and resumed employment without any intervening convalescence period." Force & Norris, *supra*, § 26:37 (collecting cases). That a seaman finds work on another vessel is evidence that he has fully recovered but is not conclusive. *Complaint of Robbins*, 575 F. Supp. 584, 587 (W.D. Wash. 1983); *compare Dowdle v. Offshore Exp., Inc.*, 809 F.2d 259, 266 (5th Cir. 1987) (seaman's reemployment in his chosen occupation terminates maintenance and cure), *and Crow v. Cooper Marine & Timberlands Corp.*, 657 F. Supp. 2d 1248, 1252 (S.D. Ala. 2009) (no obligation to pay maintenance when seaman is by his own choice employed in his accustomed trade by another vessel but has not yet reached MMI), *with Yates v. Dann*, 223 F.2d 64, 67 (3d Cir. 1955) (that seaman "was forced by financial necessity to return to his regular employment is not legally a bar to his recovery"), *and Vaughan*, 369 U.S. at 530–31 (seaman's taxi driver income could not be set off against maintenance award where he was forced to take non-seaman's work out of economic

*Knieling v. Fook et al.*
Civil No. 2022-36
Page 13

there remain factual issues in dispute precludes a finding for defendants and the motion is therefore

denied.[13]

---

necessity); *see also Pyles*, 372 F.2d at 619 ("A seaman by voluntarily working at his accustomed trade rather than using maintenance and cure to speed his recovery cannot by those tactics enhance the liability of the shipowner any more than the shipowner can be permitted to minimize his liability by refusing to pay and forcing the seaman back to work."); *cf. Cooper v. Diamond M Co.*, 799 F.2d 176, 179 (5th Cir. 1986) (where seaman continued to work, "albeit 'in pain,'" for years after injury, maintenance and cure claim did not accrue until she became incapacitated to do seaman's work); *Spencer v. Grand River Nav. Co.*, 644 F. App'x 559, 564 (6th Cir. 2016) (claim did not accrue until plaintiff became unfit to continue working and stopped working as a seaman, stating "that he continued working as a seaman until then negates the notion that he became incapacitated to perform seaman's work before then").

The Court notes that plaintiff here took no time off work to convalesce after her injury and continued to work on other boats throughout 2021, 2022, and 2023. Plaintiff testified that she had to work to survive but did not tell Fook that she was only working because she needed the money, nor did she request paid time off to heal. [ECF 83-3] at 112; [ECF 83-4] at 49–50. Plaintiff alleges difficulty performing her work due to her finger, but she did not tell anyone on any of the charters that she was injured or had limitations, and in fact received commendations for her chef skills. [ECF 83-3] at 125–27.

[13] Plaintiff focuses much of her argument on the proper cutoff date for maintenance and cure but overlooks the initial proscription that maintenance payments are to provide "the living allowance for a seaman while he is ashore recovering from injury or illness." *Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1079 (3d Cir. 1995) (citing *Vaughan*, 369 U.S. at 531); *Delaware River & Bay Auth. v. Kopacz*, 584 F.3d 622, 624 (3d Cir. 2009) ("Its original purpose was clear and compelling—to ensure injured seamen funds adequate to cover basic living expenses during their recovery."); *Saco v. Tug Tucana Corp.*, 483 F. Supp. 2d 88, 99–100 (D. Mass. 2007) (maintenance and cure is "the provision of, or payment for, food and lodging . . . as well as any necessary health-care expenses . . . incurred during the period of recovery"); *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129, 1131 (5th Cir. 1981) ("Maintenance is intended to cover the reasonable costs the seaman incurs in acquiring food and lodging ashore during the period of his illness or disability."); *see also Hurtado v. Balerno Int'l Ltd.*, 408 F. Supp. 3d 1315, 1329 (S.D. Fla. 2019) ("Once the seaman establishes his right to maintenance and cure, the burden of persuasion shifts to the shipowner to prove that the seaman has reached the point of maximum medical improvement." (citation omitted)). As noted above, plaintiff took no time off to convalesce following her injury, and she did in fact receive the benefit of maintenance in that she was provided with food and lodging on each vessel she worked on throughout 2021, 2022, and 2023. A seaman is only entitled to maintenance and cure for expenses actually incurred. *See Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 588 (5th Cir. 2001) ("one who has not paid his own expenses . . . cannot recover maintenance and cure from the ship owner" (citation omitted)).

Moreover, plaintiff has provided no evidence to support her request for maintenance at $91.30 per day. "The amount of maintenance is a factual determination based upon evidence of the seaman's actual expenditures for his food and lodging." Schoenbaum, *supra*, § 6:32. Thus, once the seaman has shown entitlement to maintenance, "he must bring forth prima facie evidence" of his costs actually incurred. *Id.*; *see Hall*, 242 F.3d at 587 ("A seaman is entitled to the reasonable cost of food and lodging, provided he has incurred the expense."). "The burden of rebuttal then shifts to the defendant." Schoenbaum, *supra*, § 6:32. Plaintiff's first attorney calculated maintenance in 2021 based on her reported rent and grocery expenses on St. Thomas at that time. *See* [ECF 83-6] at 1 (counsel calculated maintenance based on plaintiff's monthly rent and utility expenses of $1540, and her estimated $1200 per month in spending on food). But plaintiff has resided in Florida since December 2021. [ECF 79-13] at 6 (plaintiff resided in the Virgin Islands from July to December 2021, and has resided in Florida since December 6, 2021).

In light of these and other factual issues, the Court cannot at this juncture find for either party on the maintenance issue.

*Knieling v. Fook et al.*
Civil No. 2022-36
Page 14

**B. Punitive Damages**

i.   Parties' Arguments

Defendants contend plaintiff cannot sustain her request for punitive damages on her ground IV claim for maintenance and cure because there is no evidence that they acted wantonly, willfully, or outrageously in redressing that claim.  [ECF 80] at 19–20.  Defendants point out that they immediately agreed to pay her medical expenses, and that Fook communicated with plaintiff about her treatment and directed her to send invoices.  *Id.* at 20.  Defendants further submit that they did not ignore their obligation, noting that in addition to the Zelle payments made, they offered to send plaintiff $2,000 to pay any outstanding bills.  *Id.*[14]  As to plaintiff's 2023 demand for maintenance and cure,[15] defendants contend "it was more than reasonable for [them] to reject this request" because Dr. Fletcher's recommendations are "nothing more than palliative treatments by a doctor who found that the Plaintiff's injury to her finger was fully healed before he ever examined her." [ECF 78] at 3.

In opposition, plaintiff points to the Supreme Court's decision in *Atlantic Sounding Company* holding that "an injured seaman may recover punitive damages for his employer's willful failure to pay maintenance and cure."  [ECF 93] at 7 (quoting *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 407 (2009)).  Plaintiff contends such damages are warranted here because defendants lacked an unequivocal justification to deny her requests for maintenance payments.  *Id.*

---

[14] On October 6, 2021, plaintiff's first counsel emailed a maintenance and cure demand to Poston and Fook, requesting payment of outstanding medical bills and maintenance payments retroactive to September 1, 2021.  [ECF 83-6] at 1.  On December 9, 2021, plaintiff's then-counsel sent to Poston's counsel another request for maintenance and cure. [ECF 83-7].  Defendants responded on January 19, 2022, disputing plaintiff's claim and offering to pay $2,000.00 to cover her medical bills.  [ECF 83-8].  According to defendants, plaintiff never responded.  [ECF 87-1] ¶ 16.

[15] On June 2, 2023, plaintiff's current (and third) counsel sent to defendants another maintenance and cure demand, requesting payment of outstanding medical bills and $58,340.70 for maintenance from the period of September 1, 2021 to June 2, 2023.  [ECF 83-11] at 1–2.  Defendants responded on June 27, 2023, again disputing plaintiff's claim and renewing their offer to pay the medical bills.  [ECF 83-12].

*Knieling v. Fook et al.*
Civil No. 2022-36
Page 15

Plaintiff further contends that summary judgment for defendants on this issue is inappropriate because there is a factual dispute as to what medical expenses defendants paid, and because a jury could find that defendants acted in a willful, wanton, or callous manner when they failed to reinstate payments after receiving Dr. Fletcher's records. *Id.* at 8.

  ii. Legal Standard

   Punitive damages are only available for a defendant's willful and wanton refusal to pay maintenance and cure. *Atl. Sounding Co.*, 557 U.S. at 424. Such conduct includes "gross negligence," and "reckless indifference to the rights of others." *Morgan v. Almars Outboards, Inc.*, 316 F. Supp. 3d 828, 846 (D. Del. 2018) (citation omitted); *see also In re 4-K Marine, L.L.C.*, 914 F.3d 934, 938 (5th Cir. 2019) ("Punitive damages and attorney's fees are assessed only for behavior that is *egregious*."). "Examples of employer behavior that could merit punitive damages [] include[] (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; [and] (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically." *Martin v. L & M Botruc Rental, LLC*, 2019 WL 112482, at *10 (E.D. La. Jan. 3, 2019) (citation omitted). Other courts have suggested that punitive damages may be warranted where the shipowner terminates a seaman's benefits without an "unequivocal justification" to do so, *Vaughn*, 672 F. Supp. 3d at 190, or where the shipowner's refusal to pay stems "from a wanton and intentional disregard of the legal rights of the seaman." *Kalyna v. City of New York*, 2018 WL 1342488, at *4–5 (E.D.N.Y. Feb. 28, 2018) (citation omitted). Additionally, the Fifth Circuit has held that there must be an element of bad faith. *Martin*, 2019 WL 112482, at *10.[16]

---

[16] One court has described "an escalating scale of liability" for maintenance and cure claims:

  [A] shipowner who is in fact liable for maintenance and cure, but who has been

That punitive damages may be warranted in some situations does not mean that a shipowner must immediately commence payments upon receipt of the seaman's demand. Rather, the shipowner "is entitled to investigate and require corroboration of the claim." *In re 4-K Marine*, 914 F.3d at 938 (citation omitted). Thus, "[t]he seaman's right to maintenance and cure is balanced with his employer's interests by allowing the employer to investigate and reasonably withhold payment." *Id.* at 938–39.

    iii.    Analysis

The Court finds no evidence of any action by defendants that would support punitive damages.

There is no dispute that plaintiff did not ask for maintenance until her counsel sent a letter to defendants in fall 2021, and defendants responded to that letter.[17]  There is no evidence that

---

reasonable in denying liability, may be held liable only for the amount of maintenance and cure. *If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages.* If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.

*Hurtado*, 408 F. Supp. 3d at 1331 (citation omitted).

[17] "The ship owner bears the obligation to investigate a seaman's maintenance and cure claim and examine all medical evidence in determining whether maintenance and cure is owed." *Vaughn*, 672 F. Supp. 3d at 189–190.

  Here, plaintiff's first counsel sent demand letters in September and December 2021 requesting defendants pay plaintiff's outstanding medical bills totaling $1,744.92, and also pay plaintiff maintenance at the rate of $91.30 per day. *See* [ECF 83-6 & 83-7].  In the December 9, 2021 letter, counsel wrote plaintiff had "gone over three months without any income or maintenance payments" and that "[h]er situation is getting desperate." [ECF 83-7].  However, plaintiff stated under oath that she worked on charters in August, November, and December 2021, and that she also received Covid stimulus payments.  [ECF 79-13] at 2, 5.

  Counsel for defendant Poston responded on January 19, 2022, citing case law for the proposition that "evidence that the seaman has returned to work supports a claim that maintenance and cure are no longer required." [ECF 83-8] at 1.  Counsel noted that based on plaintiff's work on another vessel after leaving Somewhere Hot, Poston "assumed that she was 'well' and thus no longer entitled to maintenance and cure," and did not understand why plaintiff believed she could be paid for an injury that healed. *Id.*  Poston offered to pay $2,000 for plaintiff's medical bills, but plaintiff never responded.  That defendants offered to pay to cover plaintiff's outstanding bills and any others they might have missed demonstrates a lack of willful ignoring of plaintiff's needs.

plaintiff asked Fook to provide her with food or lodging during the time between charters. [ECF 83-4] at 19. Plaintiff did not make another request for maintenance and cure until her current counsel filed the SAC and sent a demand letter.[18]

Further, plaintiff described Fook's response to her maintenance and cure request as "aloof," but denied his actions were malicious or outrageous. [ECF 83-4] at 34–36. Nor does this Court's review of the record reveal any conduct that could be characterized as such.[19] For example, there is no evidence that Fook did anything to prevent plaintiff from obtaining medical treatment or refused any request by her to leave the vessel to seek treatment.[20] Nor is there any evidence that plaintiff needed to leave the vessel to recover and was denied maintenance for such period of convalescence.

Accordingly, the Court finds defendants are entitled to summary judgment on the issue of punitive damages for plaintiff's count IV maintenance and cure claim, and plaintiff has failed to identify a genuine dispute of material fact on this issue. *See, e.g.*, *Crow*, 657 F. Supp. 2d at 1252

---

[18] Plaintiff did not allege a claim for maintenance and cure when she brought this action in May 2022, or when she filed her first amended complaint in September 2022. *See* [ECFs 1, 15]. She did not make another demand for maintenance and cure until June 2, 2023, when her current counsel sent a letter requesting defendants pay outstanding medical bills and $58,340.70 in maintenance payments. [ECF 83-11] at 1–2. Counsel stated it had come to his attention that plaintiff was being forced back into the service of a vessel based on defendants' failure to pay, and alleged defendants had not provided plaintiff with any maintenance and cure benefits following her injury. [ECF 83-11] at 1. Defendant Poston responded on June 27, 2023, reiterating that, based on defendants' investigation of the matter, they did not believe plaintiff was entitled to further maintenance beyond what they had already provided, and renewing their offer to pay any outstanding medical bills. [ECF 83-12] at 1–2. Defendants also pointed out that when they were previously advised by plaintiff's former counsel that there were some outstanding bills, they offered to pay those expenses, but plaintiff never responded. *Id.* at 1.

[19] Fook testified that "as far as I know from my record, I paid all of the bills that were sent to me, including her pay and the hospital bills. Whatever we needed to take care of, I did pay her. I did send that money. She always sent me the invoices, and I – I made sure it was taken care of." [ECF 83-1] at 11–12. When plaintiff's first attorney emailed him on Oct 6, 2021 regarding outstanding bills, he talked to Poston and Poston said he would take care of her medical bills. *Id.* at 40.

[20] Fook testified that he offered plaintiff medical treatment "right away," telling her there was a hospital on St. Thomas that she could go to. [ECF 83-1] at 33. The following day the boat was closer to Red Hook, and he again offered her to leave the boat to get medical attention at the family practice there. *Id.*; *see id.* at 36 (stating that plaintiff was offered to get off the boat and get treatment right away "umpteen times").

*Knieling v. Fook et al.*
Civil No. 2022-36
Page 18

(finding defendant's refusal to pay maintenance and cure was not "wanton and willful" where

seaman resigned to take job on another vessel, "especially in light of the fact that '[f]ederal courts

are in disagreement as to whether the right to maintenance and cure extends [after] a seaman [is]

re-employe[d] in his accustomed trade'" (alterations in original) (citation omitted)).

## V.    CONCLUSION

Accordingly, for the forgoing reasons, and the premises considered, it is hereby ORDERED:

(1)    Defendants' motion for summary judgment [ECF 78] is DENIED as to plaintiff's claim for maintenance.

(2)    Defendants' motion for summary judgment [ECF 78] is GRANTED as to plaintiff's request for punitive damages on her maintenance and cure claim.

(3)    Plaintiff's motion for partial summary judgment [ECF 81] is DENIED.

Dated: May 30, 2024                    S\_____
                                         **RUTH MILLER**
                                         United States Magistrate Judge